IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CHARLEY HUGHES,**

        **Plaintiff,**

    **v.**                              CASE NO. 12-3250-SAC

**JAMES HEIMGARTNER,
et al.,**

        **Defendants.**

**MEMORANDUM AND ORDER**

This pro se civil complaint was filed pursuant to 42 U.S.C. § 1983 by an inmate of the El Dorado Correctional Facility in El Dorado, Kansas (EDCF). Plaintiff alleges that the Warden and Chaplain at the EDCF denied his request for Halal meals[1] in segregation, and that this violated his rights under the Equal Protection Clause, the First and Fourteenth Amendments, and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-1, *et seq.* Mr. Hughes is required to provide adequate financial information in support of his motion to proceed without prepayment of fees, and given time to show cause why portions of his complaint

---

[1] As the Tenth Circuit Court of Appeals recently explained:

> There are varying Islamic dietary traditions among Muslims, some more strict than others. According to the Islamic Food and Nutrition Council of America (IFANCA) and Islamic Services of America (ISA), a "halal," or "lawful" diet, prohibits items deemed "haram" (or "unlawful"), including pork and its by-products, animals improperly slaughtered or killed, alcohol and intoxicants, blood and blood by-products, and foods contaminated with haram products.

*Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1313 (10th Cir. 2010).

should not be dismissed.

**FACTUAL BACKGROUND & CLAIMS**

As the factual background for his complaint, Mr. Hughes alleges as follows. On May 7, 2012, he sent a form 9 to the "Chaplain Department" asking "to receive the Halal Meal that Muslims in general population" (GP) receive during the Islamic feast of "Eid UL FITR (completion of the Ramadan Fast)." The chaplain informed plaintiff that Muslims in segregation do not get the same privileges as Muslims in GP and he would not be receiving the Halal Meal.[2] Plaintiff names as defendants James Heimgartner, Warden, EDCF, and (fnu) Phelan, Chaplain, EDCF, in both their individual and official capacities. He alleges that defendant Heimgartner was acting under color of state law, which he explains by quoting the Fourteenth Amendment and stating that Heimgartner violated this constitutional provision "by rules he set for prisoners in segregation." With respect to defendant Phelan, plaintiff explains that Phelan acted under color of state law by denying them "holy day meals."

Plaintiff alleges that he filed a grievance requesting Halal meals while in segregation that was denied by the chaplain, the

---

2   Plaintiff has clearly limited his allegations to a short and plain statement of the underlying facts. He has filed a Memorandum of Law in Support in which he generally discusses RLUIPA provisions and various cases on religious freedom and the First Amendment and asserts that Congress passed the Religious Freedom Restoration Act and the RLUIPA to provide "heightened protection for religious exercise in prison." He does not refer to facts underlying his claim in his memorandum and discuss how the legal provisions he cites apply to those facts.

2

Warden, and the Secretary of Corrections.  He thus alleges that he has exhausted prison administrative remedies.

Plaintiff generally claims that defendants' refusal to provide a Halal Meal to Muslims in segregation is "a substantial burden on our exercise of religious beliefs" as it creates "pressure on (them) to consume meals that do not conform" to Islamic Law.  As Count I, he claims that Equal Protection was violated "by the facility denying" equal treatment to Muslims in segregation.  As Count II, he claims violation of the "Free Exercise Clause" that protects his right to practice his religion.

Mr. Hughes seeks "money damages including punitive damages" and a declaratory judgment.  He also seeks an injunction and specifically requests a Halal Meal consistent with "our sincerely held religious beliefs" during Eid-FITR while in segregation.

**FILING FEE**

The statutory fee for filing a civil rights complaint in federal court is $350.00.  Plaintiff has filed a Motion to Proceed without Prepayment of Fees (Doc. 2).  However, the financial information provided in support of the motion is inadequate.  28 U.S.C. § 1915 requires that a prisoner seeking to bring a civil action without prepayment of fees submit, in addition to his affidavit, a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately

3

preceding the filing" of the action "obtained from the appropriate official of each prison at which the prisoner is or was confined." 28 U.S.C. § 1915(a)(2). Mr. Hughes has filed two prior civil rights actions in this court, and is aware of the financial information that is required by federal law. In his last case, he submitted the appropriate certified Kansas Department of Corrections Inmate Account Statement. The current financial records that he has submitted in this case are not certified. Nor are they complete statements of his inmate account as they show nothing more than the beginning balance in his account for 5 of the requisite 6 months. Plaintiff is required to obtain and submit the proper KDOC certified statement of his inmate account transactions for the appropriate six-month period. If he fails to comply with this order within the allotted time, this action may be dismissed without further notice.

**SCREENING**

Because Mr. Hughes is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

4

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court also accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). However, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The complaint must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court has screened plaintiff's complaint with the foregoing standards in mind and finds the following deficiencies.

**FAILURE TO STATE EQUAL PROTECTION CLAUSE CLAIM**

Plaintiff has not alleged facts in his complaint to establish the essential elements of a denial of equal protection claim. "Equal protection is essentially a direction that all persons similarly

5

situated should be treated alike." *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006). In order to succeed on an equal protection claim, Mr. Hughes must allege that he was "similarly situated" to the Muslim inmates in GP, and that the difference in treatment was not "reasonably related to legitimate penological interests." *Fogle*, 435 F.3d at 1261 (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998); *Turner v. Safley*, 482 U.S.78, 89 (1987)); *see also Rider v. Werholtz*, 548 F.Supp.2d 1188 (D.Kan. 2008)(citing *Riddle v. Mondragon*, 83 F.3d 1197, 1207 (10th Cir. 1996)).

Plaintiff alleges no facts showing that he is or was "similarly situated" to Muslim inmates in GP at the EDCF. A segregated inmate is "by definition, not similarly situated to general population inmates during his time in administrative segregation." *Fogle*, 435 F.3d at 1261. Nor does plaintiff allege facts to show that the challenged "difference in treatment" between Muslim inmates in segregation and those in GP "was not 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Turner*, 482 U.S. at 89). There is a presumption in favor of validity of prison officials' disparate treatment. *Hill v. Pugh*, 75 Fed. Appx. 715, 720 (10th Cir. 2003)(unpublished).[3] Furthermore, plaintiff does not allege facts suggesting that he was treated differently from other inmates because of his religion or some other suspect classification.

---

3   Unpublished opinions are cited herein for persuasive value and not as binding precedent. See Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

Rather, he alleges disparate treatment based solely upon his being housed in segregation. The court finds that plaintiff's denial of equal protection allegations are nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Ashcroft*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**FAILURE TO STATE A CLAIM FOR DAMAGES**

Plaintiff contends that the defendants' alleged acts violated his rights under the United States Constitution to freely exercise his religion.[4] He also claims that they violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).[5]

---

4  "Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs. What constitutes a 'reasonable opportunity' is determined in reference to legitimate penological objectives." The Tenth Circuit Court of Appeals "recognizes that prisoners have a constitutional right to a diet conforming to their religious beliefs." *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)(*citing LaFevers v. Saffle*, 936 F.2d 1117, 1119-20 (10th Cir. 1991). They have specifically held that the failure to accommodate a prisoner's religious meal requirements during Ramadan because he was in segregation violated his First Amendment right to freely exercise his religion. *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205, 1215 (10th Cir. 1999).

5  In relevant part, RLUIPA provides that:

   No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person-

   (1)  is in furtherance of a compelling governmental interest; and

   (2)  is the least restrictive means of furthering that compelling governmental interest.

7

Plaintiff is not entitled to damages under RLUIPA. In *Sossaman v. Texas*, ___U.S.___, 131 S.Ct. 1651 (2011), the United States Supreme Court held that states did not waive their Eleventh Amendment sovereign immunity to suits for money damages under the RLUIPA, and as a consequence money damages are not available as a private remedy for violations of RLUIPA. As a consequence, a plaintiff may not recover damages under RLUIPA from defendant state employees acting in their official capacities. This is because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office;" and "[a]s such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Eleventh Amendment immunity bars plaintiff's claim for money damages under RLUIPA against defendants for acts taken in their official capacities.

The Tenth Circuit has also recently held that there is no cause of action under RLUIPA against individual defendants in their individual capacities. *Stewart v. Beach*, 701 F.3d 1322, 1333-35 (10th Cir. 2012); *see also Sharp v. Johnson*, 669 F.3d 144, 153-55 (3rd Cir.), *cert. denied*, 133 S.Ct. 41 (2012); *Nelson v. Miller*, 570 F.3d

---

42 U.S.C. § 2000cc–1(a). "Thus, to proceed with his RLUIPA claim", Mr. Hughes must demonstrate that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb*, 600 F.3d at 1312. The issue is not whether the lack of a halal diet substantially burdens the religious exercise of any Muslim prisoner in EDCF segregation, as plaintiff sometimes couches his claim, but whether it substantially burdened plaintiff's "own exercise of his sincerely held religious beliefs." *Id. at* 1314.

868, 885-89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 184-189 (4th Cir. 2009)(*citing Pennhurst State School & Hospital v. Halderman*, 451 U.S.1, 17 (1981)); *Boles v. Neet*, 402 F.Supp.2d 1237, 1241 (D.Colo. 2005), *aff'd,* 486 F.3d 1177 (10th Cirl. 2007); *Ciempa v. Jones,* 745 F.Supp.2d 1171, 1198 (N.D. Okla. 2010). Accordingly, plaintiff's claims for damages under RLUIPA are subject to being dismissed with prejudice.

Plaintiff fails to state sufficient facts to support a claim for compensatory damages under the Free Exercise Clause. This is because federal law prohibits prisoners from bringing federal actions "for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Tenth Circuit has held that this limitation on recovery applied to a plaintiff's First Amendment claim that prison officials denied him a Kosher diet (*Ciempa*, 745 F.Supp.2d at 1201)(citing *Searles v. Van Bebber*, 251 F.3d 869, 876-77 (10th Cir. 2001)) and to claims for actual or compensatory damages. *Searles,* 251 F.3d at 879, 881; *see also*, *Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir.), *cert. denied*, 133 S.Ct. 359 (2012); *Nasious v. Robinson*, 2010 WL 1268135, *8, n.6 (D.Colo. Feb. 17, 2010)(unpublished), *aff'd in part dismissed in part*, 396 Fed.Appx. 526 (10th Cir. Sept. 29, 2010). Mr. Hughes has not described any physical injury caused by the alleged deprivations of his constitutional rights. Accordingly, his claims for actual or compensatory damages are subject to being dismissed unless he

9

presents additional facts showing a prior physical injury.

Plaintiff baldly claims a right to relief in the form of punitive damages. Punitive damages are available in a § 1983 lawsuit. However, Mr. Hughes has failed to allege any facts that would entitle him to a punitive damages award. Punitive damages "are to be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992)(quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)); *Ciempa*, 745 F.Supp.2d at 1201; *Nasious*, 2010 WL 1268135 at *8, n. 6 *(*citations omitted); *see also Patel v. Wooten*, 264 Fed.Appx. 755, 760 (10th Cir. 2008)(unpublished)(determining, in the First Amendment context, that prison officials' actions did not "rise to the level of evil intent or reckless or callous indifference to sustain a jury award of punitive damages")). Mr. Hughes describes no act on the part of either defendant that evinces reckless or callous indifference or evil intent. Unless he alleges additional facts showing a culpable motive on the part of both defendants, his claim for punitive damages is subject to dismissal.

If plaintiff's claims for "damages including punitive" are dismissed, this complaint may proceed upon his claims for declaratory and injunctive relief against defendants in their official

capacities under RLUIPA[6] and against defendants in their individual and official capacities under the Free Exercise Clause.[7]

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff is given thirty (30) days in which to provide a complete, certified copy of his KDOC inmate account statement for the six-month period immediately preceding the filing of this complaint in support of his motion to proceed without prepayment of fees.

**IT IS FURTHER ORDERED** that within the same thirty-day period plaintiff must show cause why the following claims should not be dismissed from the complaint: (1) his denial of equal protection claim; (2) his RLUIPA claim for damages, with prejudice; (3) his claim for compensatory damages under the Free Exercise Clause due to lack of physical injury; and (4) his claim for punitive damages under the Free Exercise Clause for failure to allege facts in support.

**IT IS SO ORDERED.**

Dated this 27th day of February, 2013, at Topeka, Kansas.

---

[6] *See Nasious*, 2010 WL at 1268135; *Boles*, 402 F.Supp.2d at 1240-41 ("Appropriate relief" under RLUIPA is limited to injunctive or declaratory relief.).

[7] State officials acting in their official capacities are not "persons" that can be sued under 42 U.S.C. § 1983. *Will*, 491 U.S. at 71. However, "official-capacity actions for prospective relief are not treated as actions against the State." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *see also Ex Parte Young*, 209 U.S. 123 (1908). It follows that the doctrine of sovereign immunity does not bar plaintiff's claim for prospective non-damages relief against defendants in their official capacities.

s/Sam A. Crow
U. S. Senior District Judge