IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHARLEY HUGHES,                          )
                                          )
                      Plaintiff,          )
                                          )
         v.                               )          Case No. 5:12-cv-3250-JAR
                                          )
JAMES HEIMGARTNER, et al.,               )
                                          )
                      Defendants.         )
                                          )
_____ )

## MEMORANDUM AND ORDER

*Pro se* Plaintiff Charley Hughes, an inmate incarcerated at El Dorado Correctional

Facility ("EDCF") in El Dorado, Kansas, brings suit *in forma pauperis* under 42 U.S.C. § 1983

against EDCF Warden James Heimgartner and former EDCF Chaplain Thomas Phelan.  Plaintiff

alleges that Defendants failed to provide him with a religious celebratory meal in violation of his

rights under the Equal Protection Clause, the Free Exercise Clause, and the Religious Land Use

and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, *et seq*.

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc.

23).  The motion is fully briefed and the Court is prepared to rule.  For the reasons stated in

detail below, the Court denies Defendants' summary judgment motion.  However, Plaintiff's

claims against Defendant Phelan in his individual capacity are dismissed without prejudice for

lack of personal jurisdiction.  In addition, Plaintiff's RLUIPA claim against Defendant

Heimgartner in his individual capacity is dismissed with prejudice pursuant to 28 U.S.C. § 1915.

## I.    Background

### A.    *Uncontroverted Facts*

Plaintiff is an EDCF inmate who, because of disciplinary infractions involving violent

behavior, has been confined to a living unit segregated from the general prison population.  In March 2010, he filed a religious affiliation form with EDCF indicating that he is a follower of Islam.

Eid ul Fitr is one of two major religious observances in Islam.  It marks the completion of the month of Ramadan, during which Muslims fast from dawn to dusk.  Eid ul Fitr is typically celebrated with a sweet breakfast, prayer, and then a feast.  The Eid ul Fitr celebration occurs once a year.

In July 2012, Defendant Phelan sent an email to EDCF staff outlining that year's procedures for accommodating observers of the Ramadan fast.  The email indicated that on the day of Eid ul Fitr, Ramadan observers in the general prison population would attend a feast in the prison's Spiritual Life Center.  Inmates attending the feast would enjoy sweet food items like doughnuts, grapes, orange juice, and strawberry and chocolate milk, all provided by the Kansas Department of Corrections' ("KDOC") contract food vendor.  Inmates would be subject to a pat-down search at the conclusion of the feast to prevent food items from leaving the Spiritual Life Center.  Muslim inmates housed in "segregation," however, would not be permitted to attend the feast at all and could not have the special food items served at the feast delivered to them.  That directive was consistent with the policy set forth in EDCF General Order 23-103, providing that "[b]anquets and refreshment events shall only be open to those inmates . . . who are housed in the facility general population units.  No meals shall be approved for delivery to inmates on segregation or RDU intake status."[1]

Plaintiff contacted the EDCF Chaplain Department in May 2012, requesting permission

---

[1]Doc. 11-5 at 6.

to receive the Eid ul Fitr meal that Muslim inmates in the general prison population receive. That request was denied, and Plaintiff filed a grievance with his unit team manager on the basis that failure to partake in a special Eid ul Fitr meal would impose a substantial burden on Plaintiff's religious exercise.  The team manager responded that "[t]his is policy and has been for several years.  When you get to population you may participate in this event."[2]

Plaintiff appealed the team manager's decision, arguing that the meal restriction would "render [his] celebration of a mandatory holiday impossible."[3]  Plaintiff also stated that "Jews while in segregation are able to receive the Passover meals but the Muslims are told we have to be in population to receive our Halal meal for Eid [ul] Fitr."[4]  Notwithstanding those assertions—the truth of which are uncontroverted on summary judgment[5]—the team manager's decision was summarily upheld on appeal by Defendant Heimgartner and, ultimately, KDOC Director of Religious Programs Gloria Geither.  Eid ul Fitr passed and Plaintiff did not receive the Eid ul Fitr meal.

### B.    Procedural History

Having exhausted the administrative remedies available to him, Plaintiff brought this action against Defendants Heimgartner and Phelan under 42 U.S.C. § 1983.  He filed his original Complaint (Doc. 1) on December 10, 2012, asserting RLUIPA, free exercise, due process, and equal protection claims against Defendants in both their individual and official capacities.

---

[2]Doc. 11-6 at 5.

[3]*Id.* at 4.

[4]*Id.*

[5]*See* Doc. 27 at 1 (declaring under oath that "EDCF staff are authorized to deliver and serve special meals for Jews who are on Passover in segregation").

Because Plaintiff is a prisoner, Judge Crow screened the Complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[6]  Judge Crow found several deficiencies in the Complaint and ordered Plaintiff to show cause why his equal protection claim, his RLUIPA claim for monetary damages, and his free exercise claim for monetary damages should not be dismissed.  Plaintiff then requested leave to amend his complaint, which Judge Crow granted.[7]

Plaintiff filed his First Amended Complaint (Doc. 9) on November 6, 2013, stating additional facts and again asserting RLUIPA, free exercise, due process, and equal protection claims against Defendants, again in both their individual and official capacities.  The Amended Complaint requested punitive damages as well as injunctive relief requiring EDCF to "start giving Muslim [i]nmates in segregation the same meals Muslims in population receive during the Eid-ul-Fitr Feast."[8]  Plaintiff did not request compensatory damages.[9]

Judge Crow screened the Amended Complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, and again found deficiencies.[10]  This time, Judge Crow dismissed Plaintiff's due process claim and all claims for punitive damages for failure to allege facts in support of those claims.  Plaintiff has not requested leave to amend his complaint a second time.  Thus, the only claims now remaining before the Court are Plaintiff's claims for prospective injunctive relief under RLUIPA,

---

[6]Doc. 10.

[7]Doc. 8.

[8]Doc. 9 at 5.

[9]Plaintiff asserted a claim for compensatory damages in his original complaint.  In his Motion for Leave to Amend Complaint, however, he stated his amended complaint would remove the compensatory damages claim because he did not suffer any "actual physical injury."  Doc. 7 ¶ 6.  Indeed, the amended complaint does not assert a claim for compensatory damages, but requests only punitive damages and injunctive relief.  Doc. 9 at 5.

[10]Doc. 10.

the Free Exercise Clause, and the Equal Protection Clause.  Plaintiff asserts those claims against

Defendants Heimgartner and Phelan in their individual and official capacities.

## II.      Lack of Personal Jurisdiction over Defendant Phelan in his Individual Capacity and Additional § 1915 Screening

Before addressing the parties' contentions on summary judgment, the Court addresses the

following preliminary matters.

### A.      *Failure to Effect Service on Defendant Phelan in his Individual Capacity*

First, the record indicates that Plaintiff has not effected service on Defendant Phelan in

his individual capacity.  Though Plaintiff accomplished service on Defendant Phelan in his

official capacity by serving the Kansas Attorney General, service forms for Defendant Phelan in

his individual capacity were returned unexecuted because, apparently, Defendant Phelan no

longer works for EDCF.  Defendants assert in their motion for summary judgment that the Court

lacks personal jurisdiction over Defendant Phelan in his individual capacity, as he was not

properly served with a complaint.  Plaintiff has not responded to this issue.

Fed. R. Civ. P. 4 provides in relevant part as follows:

> **(m) Time Limit for Service.**  If service of the summons and
> complaint is not made upon a defendant within 120 days after the
> filing of the complaint, the court, upon motion or on its own
> initiative after notice to the plaintiff, shall dismiss the action
> without prejudice as to that defendant or direct that service be
> effected within a specified time; provided that if the plaintiff
> shows good cause for the failure, the court shall extend the time for
> service for an appropriate period.[11]

Personal jurisdiction does not attach unless defendants are served with a complaint in accordance

---

[11]Fed. R. Civ. P. 4(m).

with the manner prescribed by Fed. R. Civ. P. 4.[12]  "Neither actual notice nor simply naming the person in the caption of the complaint" will subject a defendant to the district court's jurisdiction "if service was not made in substantial compliance" with Fed. R. Civ. P. 4.[13]

To date, more than 120 days have passed since Plaintiff filed his Amended Complaint with the Court, and Plaintiff, as noted, has not responded to Defendants' argument regarding his failure to effect service.  Accordingly, the Court dismisses the action without prejudice as to Defendant Phelan in his individual capacity; the Court exercises jurisdiction over Defendant Phelan in his official capacity only.

**B.      *RLUIPA Claim Against Defendant Heimgartner in his Individual Capacity***

28 U.S.C. § 1915(e)(2)(B) provides that "the court shall dismiss [a] case [proceeding *in forma pauperis*] at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."[14]

Pursuant to § 1915(e)(2)(B), the Court finds that Plaintiff fails to state a claim for relief under RLUIPA against Defendant Heimgartner in his individual capacity.  The Tenth Circuit's decision in *Stewart v. Beach*[15] joined several other circuits in holding that RLUIPA does not provide a cause of action against defendants in their individual capacities.[16]  That decision is

---

[12]*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51 (1999).

[13]*Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (internal citation omitted).

[14]28 U.S.C. § 1915(e)(2)(B).

[15]701 F.3d 1322 (10th Cir. 2012).

[16]*Id.* at 1333–35; *see also Sharp v. Johnson*, 669 F.3d 144, 153–55 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 41 (2012); *Nelson v. Miller*, 570 F.3d 868, 885–89 (7th Cir. 2009); *Rendelman v. Rouse*, 569 F.3d 182, 184–89 (4th Cir. 2009).

binding on this Court, and Plaintiff's RLUIPA claim against Defendant Heimgartner in his individual capacity is therefore dismissed with prejudice. The Court will consider Plaintiff's RLUIPA claim against Defendants in their official capacities in Section IV., *infra*.

### C.    *Plaintiff's Equal Protection Claim*

In his original Complaint, Plaintiff asserted an equal protection claim against Defendants on the basis that EDCF officials, by serving Eid ul Fitr meals only to Muslim inmates housed in the general prison population, treated Muslim inmates in segregation differently from those in the general population.[17] Judge Crow then ordered Plaintiff to show cause why this claim should not be dismissed for failure to state a claim under 28 U.S.C. §§ 1915A and 1915(e). Judge Crow explained that to state an equal protection claim, Plaintiff had to allege that he was "similarly situated" to those who received superior treatment and that the difference in treatment was not reasonably related to legitimate penological interests.[18] Plaintiff did not meet those requirements in his original complaint: segregated inmates are, "by definition, not similarly situated to general population inmates," and Plaintiff failed to allege facts suggesting the difference in treatment was not reasonably related to legitimate penological interests.[19]

Plaintiff responded to the show-cause order with a motion for leave to amend his complaint. In that motion, he stated that Jewish inmates housed in segregation are allowed to have special Passover meals delivered to them by KDOC's contract food vendor, yet EDCF

---

[17]Doc. 1 at 3.

[18]Doc. 4 at 6 (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)).

[19]*Id.* (quoting *Fogle*, 435 F.3d at 1261).

officials refuse to allow Eid ul Fitr meals to be delivered to Muslim inmates in segregation.[20]
Judge Crow granted leave to amend, and the Amended Complaint again alleges that Jewish
inmates receive special Passover meals while Muslim inmates are denied special Eid ul Fitr
meals.[21]  Plaintiff states this difference in treatment is motivated by animus toward Muslim
inmates and, therefore, constitutes an equal protection violation.[22]

Judge Crow did not address the amended equal protection claim in his second § 1915
screening order,[23] nor have Defendants addressed that claim in their motion for summary
judgment.  The Court now finds, however, that Plaintiff's Amended Complaint has cured the
deficiencies present in his original equal protection claim.  Construing the Amended Complaint
liberally, as the Court must,[24] the Court finds the Amended Complaint sufficiently alleges that
Plaintiff is "similarly situated" to Jewish inmates in segregation who require a Passover meal.[25]
The allegation that Jewish inmates in segregation receive a Passover meal while their Muslim
counterparts may not receive an Eid ul Fitr meal, if true, raises the plausible inference that one
religious group is being arbitrarily favored over another and that the difference in treatment is

---

[20]*See* Doc. 7 at 2, 6.

[21]Doc. 9 at 1, 3–4.

[22]*See id.* at 3–4.

[23]*See* Doc. 10.

[24]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[25]*See Guillory v. Fischer*, No. 9:12-CV-00280, 2013 WL 1294626, at *16 (N.D.N.Y. Mar. 7, 2013) ("Here,
Jewish, Muslim, Catholic and Protestant inmates are similarly situated in that they are all religious groups seeking to
utilize prison facilities to hold religious services, and Plaintiff alleges that the Defendants facilitated the use of prison
facilities for all of the other religious groups except the Jewish inmates for purely discriminatory reasons.").

thus unrelated to a legitimate penological interest.[26]  Indeed, Plaintiff alleges that Defendants'
conduct was motivated by animus toward Muslim inmates.  And Defendants, for their part, have
not controverted the accuracy of Plaintiff's allegations or offered an explanation for the alleged
disparate treatment between Muslim and Jewish inmates in segregation.  Under the
circumstances, the Court finds that Plaintiff's Amended Complaint states a viable equal
protection claim.

Defendants now move for summary judgment on Plaintiff's RLUIPA and First
Amendment claims only, leaving his equal protection claim uncontested at this stage.  The Court
will therefore proceed to the summary judgment analysis without addressing the equal protection
issue further.

## III.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no
genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."[27]  In
applying this standard, the court views the evidence and all reasonable inferences therefrom in
the light most favorable to the nonmoving party.[28]  "There is no genuine issue of material fact
unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

---

[26]*See Galloway v. Hadl*, 548 F. Supp. 2d 1215, 1219 (D. Kan. 2008) ("[T]he complaint alleges that
[defendant officers] used excessive force against plaintiff because he was black and that they would not have used
such force against a non-black person.  By implication, the complaint also alleges that the officers lacked a rational
basis for their discriminating conduct.  These allegations are sufficient to state an equal protection claim."); *see also
Lloyd v. City of New York*, 43 F. Supp. 3d 254, 264 (S.D.N.Y. 2014) (denying a motion to dismiss an equal
protection claim because, "[a]t the motion to dismiss stage, it looks like one religious group is being favored over
others").

[27]Fed. R. Civ. P. 56(a).

[28]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

reasonable jury could return a verdict for the nonmoving party."[29]  A fact is "material" if, under

the applicable substantive law, it is "essential to the proper disposition of the claim."[30]  An issue

of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the

non-moving party.'"[31]

The moving party bears the initial burden of providing the court with the basis for the

motion and identifying those portions of the record that show the absence of a genuine issue of

material fact.[32]  "A movant that will not bear the burden of persuasion at trial need not negate the

nonmovant's claim."[33]  The burden may be met by showing that there is no evidence to support

the nonmoving party's case.[34]  If this initial burden is met, the nonmovant must then "go beyond

the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the nonmovant."[35]  When the moving party

also bears the burden of proof at trial,

> a more stringent summary judgment standard applies. Thus, if the
> moving party bears the burden of proof, to obtain summary
> judgment, it cannot force the nonmoving party to come forward
> with "specific facts showing there [is] a genuine issue for trial"
> merely by pointing to parts of the record that it believes illustrate

---

[29]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[30]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[31]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[32]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[33]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325.).

[34]*Id.*

[35]*Id.*

> the absence of a genuine issue of material fact. Instead, the moving
> party must establish, as a matter of law, all essential elements of
> the issue before the nonmoving party can be obligated to bring
> forward any specific facts alleged to rebut the movant's case.[36]

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."[37] Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge and shall set forth such facts as would be admissible in evidence.[38] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[39]

Summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[40] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[41]

Finally, the Court is mindful that a *pro se* litigant's pleadings are to be liberally construed and are held to a less stringent standard than that which is applicable to attorneys.[42] "Courts must take added precautions before ruling on a motion for summary judgment when a *pro se*

---

[36]*Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (citations omitted).

[37]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[38]Fed. R. Civ. P. 56(c)(4).

[39]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[40]*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

[41]*Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[42]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

11

litigant is involved . . . especially when enforcing these [technical] requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits."[43]  Nevertheless, the Court is not authorized to become an advocate for the *pro se* litigant.[44]  "Despite the liberal construction afforded *pro se* pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[45]  Defendant's *pro se* status, in and of itself, does not prevent this Court from granting summary judgment.[46]

## IV.   RLUIPA Claim

Defendants contend they are entitled to summary judgment on Plaintiff's free exercise claim under RLUIPA.

RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of further that compelling governmental interest."[47] The Supreme Court has emphasized the breadth of protection afforded by the statute:

> Several provisions of RLUIPA underscore its expansive protection for religious liberty.  Congress defined "religious exercise" capaciously to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A).  Congress mandated that this concept "shall be

---

[43]*Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994).

[44]*Id.*

[45]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[46]*Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

[47]42 U.S.C. § 2000cc-1(a).

construed in favor of a broad protection of religious exercise, to
the maximum extent permitted by the terms of this chapter and the
Constitution." § 2000cc-3(g). And Congress stated that RLUIPA
"may require a government to incur expenses in its own operations
to avoid imposing a substantial burden on religious exercise." §
2000cc-3(c).[48]

In this case, Defendants concede for summary judgment purposes that they substantially

burdened Plaintiff's religious exercise by denying him the Eid ul Fitr meal received by the

prison's general-population Ramadan observers. The burden of persuasion, therefore, shifts to

Defendants to show that refusing the meal was the least restrictive means to further a compelling

governmental interest.[49]

The Supreme Court recently held that in considering whether asserted governmental

interests qualify as compelling, courts must not analyze those interests in the abstract.[50] "At

some great height, after all, almost any state action might be said to touch on 'one or another of

the fundamental concerns of government: public health and safety, public peace and order,

defense, revenue,' and measuring a highly particularized and individual interest directly against

one of these rarified values inevitably makes the individual interest appear less significant."[51]

Rather than endorse such a lopsided analysis, RLUIPA "contemplates a more focused inquiry":

the statute "requires the Government to demonstrate that the compelling interest test is satisfied

through application of the challenged law '*to the person*'—the particular claimant whose sincere

---

[48]*Holt v. Hobbs*, 135 S. Ct. 853, 860 (2015) (citing *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2761–62, 2781–82 (2014)).

[49]42 U.S.C. § 2000cc-1(a); *see also Yellowbear v. Lampert*, 741 F.3d 48, 56 (10th Cir. 2014).

[50]*See Holt*, 135 S. Ct. at 863.

[51]*Yellowbear*, 741 F.3d at 57 (citations omitted).

exercise of religion is being substantially burdened."[52]  Put differently, courts must "scrutiniz[e] the asserted harm of granting specific exemptions to particular religious claimants and . . . look to the marginal interest in enforcing the challenged government action in that particular context."[53]

The Court also bears in mind that RLUIPA's compelling interest test is a rigorous one, requiring asserted governmental interests to survive strict judicial scrutiny.[54]  To be sure, that test must be applied "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."[55]  The Supreme Court has made clear, however, that this deference is not tantamount to unquestioning acceptance and "does not justify the abdication of the responsibility, conferred by Congress, to apply RLUIPA's rigorous standard."[56]  RLUIPA defendants cannot meet their burden by simply asserting the existence of a compelling interest: prison officials may not "declare a compelling governmental interest by fiat."[57]

With these principles in view, the Court turns to the interests asserted by Defendants in denying Plaintiff an Eid ul Fitr meal.

---

[52]*Holt*, 135 S. Ct. at 863 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2779 (2014)) (emphasis added) (internal quotation marks omitted).

[53]*Id.* (quoting *Hobby Lobby*, 134 S. Ct. at 2779) (internal quotation marks omitted).

[54]*Yellowbear*, 741 F.3d at 59.

[55]*Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

[56]*Holt*, 135 S. Ct. at 864; *see also Yellowbear*, 741 F.3d at 57 ("Put simply, we must examine both sides of the ledger on the same case-specific level of generality: asking whether the government's particular interest in burdening this plaintiff's particular religious exercise is justified in light of the record of this case.") (citations omitted).

[57]*Yellowbear*, 741 F.3d at 59.

14

A.     *EDCF's Security Interests*

Defendants suggest that Plaintiff's religious exercise might have been accommodated in one of two ways: (1) by allowing Plaintiff to attend the Eid ul Fitr celebration with the general-population Muslim inmates, or (2) by delivering food items enjoyed at the Eid ul Fitr feast to Plaintiff in his segregated cell.  Defendants contend, however, that each of these alternatives would undermine a separate compelling security interest.

First, Defendants argue that a compelling security interest in curbing inmate violence precludes Plaintiff's attendance at the Eid ul Fitr feast.  They state, in particular, that Plaintiff's violent behavior has placed him on segregation status, and that status prohibits him from having contact with other inmates.  Allowing Plaintiff to attend the Eid ul Fitr feast with other inmates is therefore out of the question.

Second, Defendants assert that a compelling security interest in restricting contraband trade prevents them from delivering an Eid ul Fitr meal to Plaintiff's cell.  The special food items served at Eid ul Fitr, they claim, would be deemed contraband upon leaving the Spiritual Life Center because that food might be used for trading among inmates.  Defendants say that such trading is particularly likely with special food items, like those served at Eid ul Fitr, because not all inmates have access to those special items.  Because Plaintiff could hide the special food items delivered to him and then use them for trading purposes, and because such contraband trading could lead to violence, Defendants maintain they have a compelling interest in refusing to deliver the special meal to Plaintiff in segregation.

But these stated compelling interests appear inconsistent with one another.  If the Court accepts Defendants' first argument—that Plaintiff's segregation status prevents him from having contact with others—it immediately becomes unclear how Plaintiff could arrange a contraband

15

transaction with another inmate.  How can Plaintiff trade tangible contraband with an inmate population he has no access to?  And if Plaintiff cannot trade with others while in segregation, how would his possession of special food items there undermine EDCF's interest in restricting contraband trade?

Of course, it may be inappropriate or impractical for EDCF staff to eliminate *all* contact between Plaintiff and other inmates, even while he is in segregation.  Perhaps, then, Plaintiff could find occasion to trade food items if his rare interactions with others are not closely monitored; if so, the Court can accept Defendants' second argument that a special meal delivery would undermine EDCF's compelling interest in restricting contraband.  But that raises a problem with Defendants' first position: to the extent Plaintiff is allowed a degree of contact with his peers that might enable contraband trading and its attendant risk of violence, one could wonder why such contact is permissible while Plaintiff's physical attendance at the Eid ul Fitr celebration is not.  The record suggests no reason why this specific inmate's attending a religious feast with fellow Muslims would pose any greater risk of violence than his unmonitored interactions with others in the prison population.

A plausible explanation for both of these positions may well exist.  And the Court certainly owes Defendants deference with respect to prison rules regulating the movements of segregated inmates.[58]  But that deference does not relieve Defendants of their burden to adequately explain why they have a compelling interest in the specific restriction they have imposed, and, at the summary judgment stage, to establish a compelling interest in that

---

[58] *Cutter*, 544 U.S. at 723.

restriction as a matter of law.[59]  On the record currently before the Court, a reasonable jury would be free to question whether EDCF's interest in restricting contraband trade actually applies to Plaintiff in segregation, and, if it does, whether EDCF's security interest in preventing Plaintiff's contact with others is really compelling if it does not extend to contact that would enable Plaintiff to trade contraband with fellow inmates.

### B.    EDCF's Interests in Cost Containment and Efficient Prison Administration

Even if Defendants' asserted security interests could be deemed compelling as a matter of law, however, those interests alone could not justify their refusal to deliver an Eid ul Fitr meal to Plaintiff's cell: Defendants concede adequate security could be attained at a cost.  In particular, Defendants state they could eliminate the risk of contraband trading by conducting a post-meal search of Plaintiff's cell for hidden food items.  Defendants have thus, in effect, identified a less restrictive alternative that would further EDCF's asserted interest in security: delivering the Eid ul Fitr meal to Plaintiff's cell in segregation (thus preventing all contact with others) and conducting a search after Plaintiff finishes the meal (thus restricting his possession of contraband).

The question then becomes whether this security-preserving alternative would undermine some other compelling governmental interest.[60]  In that vein, Defendants state that the post-meal search would require EDCF staff to remove Plaintiff to a separate room to be searched while

---

[59]*See Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) ("When the moving party also bears the burden of persuasion at trial, to prevail on summary judgment it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it.") (internal quotation marks and citation omitted); *see also Garner v. Kennedy*, 713 F.3d 237, 242 (5th Cir. 2013) ("Because [RLUIPA's compelling interest test" is highly dependent on a number of underlying factual issues, we conclude that whether the imposition of a burden is the least restrictive means of furthering a compelling government interest is best characterized as a mixed question of fact and law.").

[60]*See Yellowbear*, 741 F.3d at 63–64 (finding that an asserted interest in avoiding a less restrictive alternative must independently satisfy the compelling interest test).

another staff member searches his cell.  Further, to deliver a special Eid ul Fitr meal to Plaintiff's cell in the first place, someone would have to ensure the meal is prepared and served in accordance with Plaintiff's religious requirements.  Defendants consider the "additional burden" of performing these tasks too high, implicitly asserting interests in cost containment and efficient prison administration.

Properly supported, those interests might in some circumstances be compelling.[61]  Here, however, Defendants fall well short of showing a compelling interest in avoiding the costs they face.

### 1. Post-meal Search

First, Defendants offer no reason a post-meal search would be cost-prohibitive or administratively taxing in light of EDCF's available resources.  Though they maintain that a search would require moving Plaintiff to a separate room, they do not attempt to quantify the cost of doing so, nor do they describe how the burden of moving Plaintiff to another room would impinge on prison budgets or administration.  Defendants, in fact, have come forward with absolutely no evidence suggesting the required search would have any adverse impact on EDCF's operations, much less that the prison has a compelling interest in eluding that impact.[62] Instead, Defendants baldly assert a compelling interest in avoiding the additional effort of conducting a search.  But that conclusory statement is insufficient to carry Defendants' burden to

---

[61]*See, e.g.*, *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1318 (10th Cir. 2010); *Muhammad v. Sapp*, 388 F. App'x 892, 896 (11th Cir. 2010); *Smith v. Ozmint*, 578 F.3d 246, 252 (4th Cir. 2009); *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007).  *But see Mem'l Hosp. v. Maricopa Cnty*, 415 U.S. 250, 263 (1974) (rejecting the argument that an interest in cost containment is compelling enough to justify penalizing the right to travel and to settle in another state).

[62]*See* 42 U.S.C. § 2000cc-3(c) ("[T]his chapter may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise.").

*demonstrate* a compelling governmental interest in this particular context.[63]

Courts have uniformly rejected similar attempts to establish compelling interests "by the government's bare say-so."[64]  In *Lovelace v. Lee*,[65] for example, the Fourth Circuit considered an asserted interest "in removing inmates from religious dietary programs where the inmate flouts prison rules reasonably established in order to accommodate the program."[66]  The court refused to recognize that interest as compelling because the prison officials presented no evidence with respect to the challenged policy's security or budget implications; the officials' "superficial explanation," standing alone, was insufficient to entitle them to summary judgment.[67]  More recently, in *Shakur v. Schriro*,[68] the Ninth Circuit rejected prison officials' claim to a compelling interest in cost containment because the record "contain[ed] no competent evidence as to the additional cost" of accommodating the plaintiff's request for a special religious diet.[69]  And just last year, in *Yellowbear v. Lampert*,[70] the Tenth Circuit rejected a prison's motion for summary judgment where the prison asserted that escorting an inmate to a sweat lodge for a religious ceremony would require locking down a portion of the prison.[71]  The prison stated, "flatly and

---

[63]*See Yellowbear*, 741 F.3d at 59 ("But this much is clear and clearly enough for our purposes: the deference this court must extend to the experience and expertise of prison administrators does not extend so far that prison officials may declare a compelling governmental interest by fiat.").

[64]*See id.*

[65]472 F.3d 174 (4th Cir. 2006).

[66]*Id.* at 190 (internal quotation marks omitted).

[67]*Id.*

[68]514 F.3d 878 (9th Cir. 2008).

[69]*Id.* at 890.

[70]741 F.3d 48 (2014).

[71]*Id.* at 59.

19

without more," that the financial and administrative costs of locking down the prison would be "unduly burdensome."[72]  The Tenth Circuit held that conclusory assertion insufficient.[73]  The prison, the court found, was required to do more than merely assert that the lock down infringed on a compelling interest in cost containment; it needed, instead, to quantify the specific costs of locking down the prison or to otherwise provide some sort of explanation about the extent to which a lock down would adversely impact the prison in light of its available resources.[74]  For that reason, the court denied the prison's motion for summary judgment.

The Court finds this case indistinguishable from *Yellowbear*.  As in *Yellowbear*, Plaintiff's religious exercise can be accommodated with measures that would impose some marginal cost on the prison.  As in *Yellowbear*, Defendants assert a compelling interest in avoiding those measures because of the additional cost.  Yet, as in *Yellowbear*, Defendants do not make the showing the Tenth Circuit requires: they wholly fail to quantify or explain the extent to which the measures necessary to secure free exercise would undermine EDCF's available resources.  Such a showing would seem particularly important in a case like this one, where Plaintiff requests accommodating measures only one day out of the year.[75]  Absent

---

[72]*Id.*

[73]*Id.* at 59–60.

[74]*Id.*; *cf. Curry v. Calif. Dep't of Corr.*, No. C-09-3408, 2013 WL 75769, at *9 (N.D. Cal. Jan. 4, 2013) (concluding that the defendants' quantitative analysis showing a $50,000 cost increase for providing a special diet to one inmate established a compelling interest as a matter of law).

[75]*See, e.g.*, *Beerheide v. Suthers*, 286 F.3d 1179, 1186 (10th Cir. 2002) (affirming the district court's finding that a prison's policy of requiring co-payments for kosher meals was not reasonably related to a legitimate interest in cost containment, where provision of free kosher meals would have a *de minimis* impact on the prison's annual food service budget).

evidence to the contrary—and the record before the Court contains none[76]—the circumstances suggest that any lasting impact on the prison's resources would be negligible.

Nor is that the only problem which prevents the Court from finding a compelling interest in avoiding a search. The record suggests yet another: EDCF's no-delivery, no-search policy appears substantially underinclusive in at least two material respects. First, Plaintiff declares under oath that EDCF already arranges delivery of special food items to religious inmates in segregation—specifically, to Jewish inmates in segregation who require a special Passover meal.[77] Thus, if EDCF in fact has a compelling interest in preventing segregated inmates from trading special food items, it is reasonable to infer that post-Passover cell and person searches already occur for segregated Jewish inmates who receive that meal.[78] Second, Defendants state that EDCF already performs post-meal searches of Muslim inmates for food items as they leave the Eid ul Fitr celebration.[79] This evidence, which suggests EDCF is sometimes willing to incur search costs after special religious meals, raises the question whether Defendants have a truly compelling interest in avoiding similar search costs with respect to Plaintiff.

Two recent decisions, both binding on this Court, explain the significance of

---

[76]*See AlAmiin v. Miller*, No. CIV-08-1371-F, 2010 WL 3603150, at *11 (W.D. Okla. June 28, 2010) ("[T]he undersigned is well aware of the budgetary challenges currently being faced by governmental agencies such as ODOC. That makes it all the more frustrating that counsel for Defendants, who know the burden required of them by controlling Tenth Circuit precedent, have come forward with absolutely no evidence in support of these proffered justifications.").

[77]Doc. 27 at 1. The Court must, at this stage, accept that uncontested statement as true. *See City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[78]Of course, if EDCF staff does not search the cells of Jewish inmates in segregation who have special Passover meals delivered to them, Defendants fail to explain why a compelling interest exists in restricting trade of the food items served at Eid ul Fitr but not those served at Passover.

[79]Defendant Phelan's July 19, 2012 email to EDCF staff states that inmates attending the celebration "may be pat searched to prevent food items from leaving the area," Doc. 11-4 at 4, and Defendant Heimgartner has filed an affidavit declaring that those searches are in fact performed, Doc. 24-1 ¶ 7.

underinclusiveness in the context of prison policies challenged under RLUIPA. The first of these is the Tenth Circuit's decision in *Yellowbear*, discussed already. There, prison officials claimed a compelling interest in avoiding the costs and administrative burden necessary to lock down a prison so that guards could escort an inmate to an on-site sweat lodge.[80] The plaintiff pointed out, however, that lock downs already occurred on a daily basis: guards regularly locked down the prison to allow for ferrying of certain inmates to other parts of the prison's campus, including the medical wing.[81] The court thus found the no-lock-down policy's underinclusiveness—"its failure to cover significant tracts of conduct implicating that [policy]'s animating and putatively compelling interest"—raised the inference that "the claimed interest [was]n't actually so compelling after all."[82] The policy's underinclusiveness, in other words, suggested that the prison itself did not view its interest in cost containment as compelling enough to justify a broader no-lock-down policy, raising doubt that the interest was in fact compelling enough to satisfy RLUIPA's strict standard. Because the prison offered no explanation to rebut the inference raised by the underinclusiveness evidence, the Tenth Circuit could not say the claimed interest in cost containment was compelling as a matter of law.[83]

The Supreme Court's 2015 decision in *Holt v. Hobbs*[84] also considered the impact of underinclusiveness. In that case, a Muslim inmate sought to grow a one-half inch beard in accordance with his religious beliefs, but prison officials refused to grant him a religious

---

[80]*Yellowbear*, 741 F.3d at 60.

[81]*Id.*

[82]*Id.*

[83]*Id.* at 60–62.

[84]135 S. Ct. 853 (2015).

exemption from its policy prohibiting beards.[85]   The prison claimed this grooming policy was necessary to prevent inmates from hiding contraband in facial hair.  The policy contained an exception, however, allowing inmates with a diagnosed dermatological problem to grow beards up to one-quarter of an inch long—even though such beards would pose security risks similar to those posed by the  beard the plaintiff sought to grow.[86]   The prison also allowed inmates to grow more than one-half an inch of hair on top of their heads, despite being a more plausible hiding place for contraband than a one-half inch beard.[87]   The Court found the grooming policy's resulting underinclusiveness troubling: "[t]he proffered objectives [of the policy were] not pursued with respect to analogous nonreligious conduct, which suggest[ed] that those interests could be achieved by narrower ordinances that burdened religion to a far lesser degree."[88]  Accordingly, the Court found the prison officials had failed to carry their RLUIPA burden.[89]

Of course, the presence of some underinclusiveness does not automatically render a prison policy invalid under RLUIPA: "A government can rebut an argument from underinclusion by showing that it hasn't acted in a logically inconsistent way—by (say) identifying a qualitative or quantitative difference between the particular religious exemption requested and other . . . exceptions already tolerated, and then explaining how such differential treatment furthers some distinct compelling governmental concern."[90]   Defendants' problem in this case, however, is the

---

[85] *Id.* at 859.

[86] *Id.* at 861.

[87] *Id.* at 865–66.

[88] *Id.* at 866 (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 546 (1993)) (internal quotation marks omitted).

[89] *Id.*

[90] *Yellowbear*, 741 F.3d 48, 61 (10th Cir. 2014).

same present in *Yellowbear* and *Holt*: Defendants make no effort to respond to Plaintiff's underinclusiveness argument.[91]  Their failure to do so precludes summary judgment in their favor.  Absent an explanation for why EDCF can deliver special meals to and search the cells of segregated Jewish inmates, a reasonable fact finder could infer that its asserted interests in denying similar accommodations to Plaintiff are not really compelling, and perhaps even pretextual.  Likewise, absent information on why EDCF can afford to conduct individual searches of the Muslim inmates who attend the Eid ul Fitr feast, a reasonable fact finder could infer that the prison's desire to avoid a single search with respect to Plaintiff does not constitute a compelling governmental interest.[92]

### 2.  Meal Preparation and Service

Defendants also argue they cannot undertake the additional burden "to ensure that all religious requirements are met" with regard to the preparation and service of Plaintiff's Eid ul Fitr meal.  EDCF employees, they claim, are not trained to provide such services, so they rely on KDOC's contract food vendor to prepare and serve special religious meals.

The Court rejects Defendants' claim to a compelling interest on this basis for reasons similar to those just discussed.  First, the record contains no indication that Plaintiff's religious beliefs require the Eid ul Fitr meal—consisting of doughnuts, grapes, orange juice, and milk—to

---

[91]*See Holt*, 135 S. Ct. at 865 ("[T]he Department has not adequately demonstrated why its grooming policy is substantially underinclusive in at least two respects."); *Yellowbear*, 741 F.3d at 61 ("Problem is, in this case the prison has made no effort (of any kind) to respond to Mr. Yellowbear's underinclusiveness evidence.  Mr. Yellowbear's evidence about the regularity of secular lock downs dangles out there unanswered, inviting a reasonable fact finder to infer that the prison's desire to avoid lock downs isn't really as compelling as it insists.").

[92]Defendants do not argue that if EDCF staff were required to conduct a post-meal search for Plaintiff, they would also have to do so for many other inmates in segregation.  But to the extent they implicitly suggest an interest in cost containment on that basis, *Holt* rejected that argument.  *See* 135 S. Ct. at 866 ("At bottom, this argument is but another formulation of the 'classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions.'  We have rejected a similar argument in analogous contexts, and we reject it again today.") (citations omitted).

be prepared or served in any special way.  Plaintiff's internal requests for an Eid ul Fitr meal did not appear to mention any special preparation or service requirements,[93] and Defendants make no suggestion as to what those requirements might be.

To the extent special preparation is required, however, Defendants do not attempt to explain how meeting those requirements would be cost-prohibitive or administratively burdensome in light of EDCF's available resources.[94]  In fact, the record suggests EDCF staff are not involved in the Eid ul Fitr food-preparation process at all: the food and drink items Plaintiff requested were to be purchased with funds of the Islamic/Moorish Science inmate group and provided by KDOC's contract food vendor.[95]

Finally, EDCF's stated interest in avoiding special food preparation and service costs appears remarkably underinclusive.  Defendants fail to show how they are able "to ensure that all religious requirements are met" for the food items already served to the general-population Muslims attending the Eid ul Fitr feast, but cannot do so for Plaintiff who requests exactly the same food items.  Nor do they describe how they can meet the religious requirements for the Passover meals they allegedly serve Jewish inmates in segregation, but cannot do the same with respect to Plaintiff's Eid ul Fitr meal.  That underinclusiveness evidence requires an explanation, but Defendants provide none.[96]

Because Defendants have not demonstrated as a matter of law that denying Plaintiff access to an Eid ul Fitr meal was the least restrictive means to further a compelling governmental

---

[93]*See generally* Doc. 11-6.

[94]*See Yellowbear*, 741 F.3d at 59.

[95]Doc. 11-4 at 4 ("All of the food and drinks will be purchased with group funds and will be provided by Aramark.").

[96]*See Holt v. Hobbs*, 135 S. Ct. 853, 865–66 (2015); *Yellowbear*, 741 F.3d at 60–62.

interest, the Court denies Defendants' motion for summary judgment on Plaintiff's RLUIPA claim.

## V.       First Amendment Claim

Defendants also contend they are entitled to summary judgment on Plaintiff's First Amendment free exercise claim.[97]

The standard of review for free exercise claims under the First Amendment is more deferential than the RLUIPA standard.  In *Turner v. Safley*,[98] the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[99]  "This reasonableness inquiry considers several factors: (1) whether there exists a rational connection between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether there are alternative means of exercising the right notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights."[100]

_____

[97]Defendant Heimgartner contends he is entitled to qualified immunity on Plaintiff's First Amendment claim against him in his individual capacity.  However, as noted in Section I. B., *supra*, and reiterated in Section VI, *infra*, Plaintiff's Amended Complaint does not request compensatory damages, and his claims for punitive damages have already been dismissed pursuant to 28 U.S.C. §§ 1915 and 1915A; the only First Amendment claim remaining against Defendant Heimgartner, therefore, is a claim for prospective injunctive relief.  "Qualified immunity does not protect a defendant in his individual capacity from a claim for injunctive relief."  *Smith v. Plati*, 56 F. Supp. 2d 1196, 1207 (D. Colo. 1999); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability *for civil damages* insofar as their conduct does not violate clearly established statutory or constitutional rights . . . .") (emphasis added).  Thus, the Court will not address Defendant Heimgartner's qualified immunity defense for Plaintiff's First Amendment claim against him in his individual capacity.

[98]482 U.S. 78 (1987).

[99]*Id.* at 89.

[100]*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citing *Turner*, 482 U.S. at 89–91).

Plaintiff claims, and Defendants do not dispute at this stage, that denying Plaintiff access to an Eid ul Fitr meal substantially burdened his sincere religious exercise, thus impinging on his rights under the First Amendment.  Defendants contend, however, that denying the meal was reasonably related to legitimate security interests in preventing violence and contraband trade. Unfortunately, beyond that assertion, Defendants' motion for summary judgment engages in no meaningful analysis of the *Turner* factors, instead stating only that because the challenged policy satisfies strict scrutiny under RLUIPA, "it necessarily also passes muster under the First Amendment's rational means test."[101]  As Defendants have not in fact met their burden under RLUIPA,[102] they leave the Court with little guidance in evaluating the merits of their motion under *Turner*.

The first *Turner* factor nevertheless favors Defendants.  EDCF certainly has legitimate interests in curbing violence and contraband trade between inmates.[103]  Because Plaintiff has a history of disciplinary infractions involving violent behavior, EDCF's decision to prevent his contact with those at the Eid ul Fitr feast eliminated at least one potential occasion for violence. And EDCF's refusal to deliver special food items to Plaintiff's cell barred any opportunity, however remote, for him to trade those food items with others.  Thus, a rational connection existed between EDCF's legitimate security interests and its refusal to supply Plaintiff with an Eid ul Fitr meal.

The second factor—the existence of an "alternative means of exercising the right"—weighs in favor of denying summary judgment.  The Tenth Circuit has held that an

---

[101]Doc. 24 at 7 (quoting *Maxwell v. Clarke*, No. 7:12cv00477, 2013 WL 2902833, at *8 (June 13, 2013)).

[102]*See* Section IV, *supra*.

[103]*See, e.g.*, *AlAmiin v. Morton*, 528 F. App'x 838, 844 (10th Cir. 2013).

"alternative means" under the second *Turner* factor "exists so long as *some* means, albeit not plaintiff's preferred means, of religious exercise is available."[104]   Here, however, Defendants do not contend that Plaintiff has an alternative means of religious expression.[105]   The record before the Court, in fact, contains no evidence that any means of religious exercise remains open to Plaintiff while on segregation status.   The Court cannot assume such evidence exists and, therefore, cannot conclude that Plaintiff retains an alternative means of exercising his rights under the First Amendment.

The third factor also favors Plaintiff.   As noted in the Court's RLUIPA analysis,[106] Defendants do little to explain the effect that supplying Plaintiff with an Eid ul Fitr meal would have on EDCF's guards, prisoners, or resources.   To be sure, the record suggests that allowing Plaintiff to attend the Eid ul Fitr celebration would subject guards and general-population Muslim inmates to an unacceptable risk of violence, as Plaintiff has had disciplinary problems in the past.   But Defendants fail to demonstrate that delivering the meal to Plaintiff's cell and performing a subsequent search for hidden food items would be costly or impractical.   In fact, to the extent the record sheds light on the feasibility of such measures, it suggests that EDCF can afford this approach: Plaintiff attests that EDCF already takes similar measures to accommodate segregated Jewish inmates on Passover.   Further, this approach would seem to have little effect on other inmates, as it would restrict both Plaintiff's access to contraband and his contact with others.   And, of course, because Eid ul Fitr occurs only one day per year, any lasting impact of

---

[104]*Hammons v. Saffle*, 348 F.3d 1250, 1256 (10th Cir. 2003).

[105]*Cf. Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015) (suggesting that where an inmate is denied the right to grow a beard in accordance with his religious beliefs, alternative means of religious expression such as maintenance of a religious diet, access to a prayer rug, and correspondence with a religious advisor might weigh against the inmate's First Amendment claim under *Turner*).

[106]*See* Section IV, *supra*.

accommodating Plaintiff would likely be *de minimis*.[107]  Since the record contains no evidence to the contrary, the Court cannot find that accommodating Plaintiff's religious exercise would "have a significant 'ripple effect' on fellow inmates or on prison staff."[108]

The fourth *Turner* factor requires the Court to consider the presence or absence of "ready, easy-to-implement alternatives that would accommodate the prisoner's rights."[109] According to the Supreme Court, "the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable."[110]  Here, the only evidence on the feasibility of delivering an Eid ul Fitr meal to Plaintiff's cell and performing a post-meal search for food items—an alternative Defendants themselves identified—suggests that this alternative would have a negligible impact on EDCF's operations.  The record thus suggests this approach is an "obvious, easy alternative" that would accommodate Plaintiff's right to a religious celebratory meal.

The Court finds on the sparse record before it that three of the four *Turner* factors weigh in favor of denying summary judgment.[111]  Thus, without further factual development, the Court cannot conclude as a matter of law that EDCF's refusal to provide Plaintiff with an Eid ul Fitr meal is reasonably related to legitimate penological interests.  The Court denies Defendants' motion for summary judgment on Plaintiff's First Amendment free exercise claim.

---

[107]*See Beerheide v. Suthers*, 286 F.3d 1179, 1190–91 (10th Cir. 2002) (finding the third *Turner* factor to weigh in favor of denying summary judgment where providing kosher meals free of charge would negatively impact the prison's annual food service budget by .158 percent).

[108]*See Turner*, 482 U.S. at 90.

[109]*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citing *Turner*, 482 U.S. at 89–91).

[110]*Turner*, 482 U.S. at 90.

[111]*See Strope v. Collins*, 492 F. Supp. 2d 1289, 1297 (D. Kan. 2007) (denying cross-motions for summary judgment because the court lacked "an adequately developed record from which the court could meaningfully evaluate" the *Turner* factors, and concluding that "genuine issues of material fact exist[ed] concerning whether defendants' withholding of publications from plaintiffs [wa]s reasonably related to legitimate penological interests").

VI.     **Eleventh Amendment Immunity**

Defendants finally contend that Eleventh Amendment immunity bars Plaintiff's First Amendment damages claims against them in their official capacities.  However, as noted in Section I. B., *supra*, Plaintiff's Amended Complaint does not request compensatory damages, and Plaintiff's claims for punitive damages have already been dismissed pursuant to 28 U.S.C. §§ 1915 and 1915A.  The Court, therefore, denies as moot Defendants' motion for summary judgment on this basis.

**IT IS THEREFORE ORDERED** that Plaintiff's action against Defendant Phelan in his individual capacity is dismissed for lack of personal jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff's RLUIPA claim against Defendant Heimgartner in his individual capacity is dismissed with prejudice pursuant to 28 U.S.C.  §§ 1915 and 1915A.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 23) is denied.

Dated: March 23, 2015

            S/ Julie A. Robinson_____
            JULIE A. ROBINSON
            UNITED STATES DISTRICT JUDGE